**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

                            Case No. 08-20585

v.                               Hon. Gerald E. Rosen

PETER HENDRICKSON,

       Defendant.

_____/

**OPINION AND ORDER DENYING**
**DEFENDANT'S MOTIONS TO DISMISS INDICTMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____October 7, 2009_____

PRESENT:  Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I.  INTRODUCTION

Defendant Peter Hendrickson is charged in a November 6, 2008 indictment with

ten counts of filing a false document with the Internal Revenue Service ("IRS"), in

violation of 26 U.S.C. § 7206(1).  These charges are based on Defendant's submission of

tax forms for calendar years 2000 and 2002 through 2006 in which he reported that he

had received no wages.

Defendant has filed three separate motions seeking the dismissal of the indictment.

In these motions, Defendant argues:  (i) that the Government has impermissibly targeted

him for prosecution because of his exercise of his First Amendment rights through public

expression of his views as to the proper interpretation of the Internal Revenue Code; (ii) that the theory of prosecution pursued in this case impermissibly compels someone in Defendant's position to either abandon his honest disagreement with the IRS's interpretation of the Internal Revenue Code or face prosecution for acting in accordance with his divergent view of the Code; (iii) that the indictment should be dismissed under Fed. R. Crim. P. 7(c)(1) and 12(b)(3)(B) for failure to allege each element of the charged offenses; and (iv) that Defendant is not a "person" within the meaning of the statute he is charged with violating, 26 U.S.C. § 7206.  The Government has responded to each of Defendant's three motions, and Defendant, in turn, has filed replies or supplemental briefs in further support of these motions.

The Court addressed these and other motions at a hearing held on May 14, 2009. Having considered the arguments of counsel at the May 14 hearing, and having reviewed the written submissions filed by the parties both before and after this hearing, the Court is now prepared to rule on Defendant's motions to dismiss.  For the reasons set forth below, the Court finds that these motions must be denied.

## II.  <u>FACTUAL BACKGROUND</u>

According to the indictment, Defendant Peter Hendrickson was employed by Personnel Management, Inc. at all pertinent times, spanning from 2000 to 2006.  In each of the relevant years giving rise to the ten counts of the indictment — namely, 2000 and 2002 through 2006 — Personnel Management reported to the IRS that Defendant had received wages for his services to the company, but Defendant filed tax forms with the

2

IRS in which he declared under penalty of perjury that he had received no wages.  The indictment alleges that these declarations were false, and charges Defendant with violating 26 U.S.C. § 7206(1) by submitting tax forms to the IRS that contained these allegedly false reports of no wages.[1]

As acknowledged in Defendant's submissions to the Court, his reports of zero wages reflect his interpretation of the Internal Revenue Code as expounded in his book, *Cracking the Code:  The Fascinating Truth About Taxation in America.*[2]  The principal thesis of Defendant's book is summarized in a brief he has filed in support of one of his pending motions to dismiss:

> . . . Cracking the Code concluded that an individual whose activities are merely those of common right, such as those working for remuneration in the private sector, as opposed to an individual who earned remuneration as a result of the voluntary exercise of a federal privilege, was not an "employee" and the remuneration he earned was not "wages", as those terms of art are defined in the tax laws.  To Cracking the Code, these interpretations of the relevant tax statute definitions were supported by the legislative history of the statutes, case law regarding whether the term "includes" is a term of limitation or expansion, and, most significantly, by the Constitutional provisions prohibiting capitations or other direct taxes, unless in Proportion to the Census or Enumeration, while approving indirect or excise taxes on the exercise of a privilege, measured by the dollar value of the privileged activity (that is "income").

---

[1]These tax forms included the familiar Form 1040 as well as Form 4852 ("Substitute for Form W-2, Wage and Tax Statement"), which is submitted by a taxpayer whose employer has failed to issue a Form W-2 to the taxpayer or who believes that the W-2 issued by the employer is incorrect.

[2]Defendant also maintains a website, http://www.losthorizons.com, through which he promotes his book and recounts the experiences of people who have filed tax returns in accordance with his interpretation of the Internal Revenue Code and received tax refunds as a result.

(Defendant's 1/15/2009 Motion to Dismiss, Br. in Support at 3 (footnote omitted).)

Defendant claims that "[t]housands" of people have read *Cracking the Code* and incorporated its analysis into their own tax filings, resulting in the IRS issuing "millions in refund checks to filers who had claimed that money was improperly withheld." (*Id.* at 4.) Despite this purportedly widespread practice, Defendant asserts that "very few" of those who have reported zero wages and received refunds "have been challenged, even civilly, and even fewer have been prosecuted." (*Id.* at 5.)[3]

Instead, Defendant maintains that the IRS's challenges to his reading of the Internal Revenue Code have focused primarily, if not exclusively, on Defendant himself. First, as reflected in a number of summons enforcement actions and challenges brought in 2004 in this District and elsewhere, the IRS has investigated allegations that Defendant was promoting abusive tax shelters. Next, the Government brought a civil suit against Defendant in 2006, seeking to recover the federal income tax refunds paid to him for the 2002 and 2003 tax years as a result of his reports of zero wages for these years, and also requesting that Defendant be permanently enjoined from filing tax forms in which he claimed to receive no wages. *See United States v. Hendrickson,* No. 06-11753 (E.D. Mich.) (Edmunds, J.)[4] Finally, and more generally, an IRS publication, *The Truth About*

---

[3]Defendant goes further in the reply brief in support of one of his motions, stating that "[n]ot a single individual other than Defendant who has filed forms[] 1040 or forms 4852 in light of the theories set forth in Cracking the Code has been or is being prosecuted." (Defendant's 2/3/2009 Reply Br. at 3.)

[4]In 2007, the Government secured an award of summary judgment in its favor on its claims to recover the refunds paid to Defendant for the 2002 and 2003 tax years. *See United*

*Frivolous Tax Arguments,* cites certain of Defendant's contentions in *Cracking the Code* as examples of frivolous interpretations of the tax code.

In their written submissions, and then again at the May 14, 2009 hearing on Defendant's motions, the parties have debated at considerable length whether Defendant is accurately characterized as a "recidivist tax defier" — as the Government contends, (*see* Gov't 1/28/2009 Response Br. at 2) — or whether Defendant's *Cracking the Code* is more properly viewed as a scholarly "study of the tax laws of the United States," as opposed to an "anti-tax tract," (Defendant's 5/22/2009 Suppl. Br. at 1-2). Regardless of how one might characterize *Cracking the Code,* and regardless of the purposes Defendant sought to achieve by publishing this book,[5] the Government notes that Defendant's challenges to the federal government's taxing authority pre-date this 2003 publication. Specifically, in 1992, Defendant pled guilty to the offenses of failure to file a federal income tax return and conspiracy to possess a destructive device, with this latter charge arising from Defendant's participation in the placement of a smoke bomb, wrapped in a

---

*States v. Hendrickson,* No. 06-11753, 2007 WL 2385071, at *1 (E.D. Mich. May 2, 2007). The court also issued a permanent injunction prohibiting Defendant from filing any tax form "or other writing or paper with the IRS that is based on the false and frivolous claims set forth in *Cracking the Code* that only federal, state or local government workers are liable for the payment of federal income tax or subject to the withholding of federal income, social security and Medicare taxes from their wages under the internal revenue laws." 2007 WL 2385071, at *4. The Sixth Circuit subsequently affirmed this ruling, and also awarded sanctions to the Government, citing "the patent baselessness of the Hendricksons' assertions on appeal." *United States v. Hendrickson,* No. 07-1510, Order at 4 (6th Cir. June 11, 2008). More recently, the Supreme Court denied Defendant's petition for a writ of certiorari. *See Hendrickson v. United States,* No. 08-1399, ___ S. Ct. ___, 2009 WL 1360379 (U.S. June 15, 2009).

[5]The legal significance of these questions is addressed below.

5

padded envelope addressed to the "tax thieves," in a bin at a U.S. Post Office. *See United States v. Hendrickson,* No. 91-80930 (E.D. Mich.) (Gilmore, J.); *see also United States v. Scarborough,* 43 F.3d 1021, 1023 (6th Cir. 1994) (discussing this incident in connection with an appeal brought by the individual who actually planted the device). Against this backdrop, the Court turns to the issues raised in Defendant's pending motions.

### III.  ANALYSIS

Through his three motions to dismiss, Defendant has advanced four separate challenges to the charges brought against him in this case. The Court addresses each of these challenges in turn.

**A.  Defendant Has Failed to Identify a Sufficient Basis for Permitting Discovery on His Claim of Selective Prosecution.**

As the first of the challenges advanced in his initial January 15, 2009 motion to dismiss, Defendant contends that the Government impermissibly selected him for prosecution based on his exercise of protected First Amendment rights — namely, his publication of a book, *Cracking the Code*, that the Government wishes to suppress. In response, the Government argues that Defendant has failed to make even a threshold showing of selective prosecution, as necessary to warrant discovery on this issue. As explained below, the Court finds that the Government has the better of the argument on this point.

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons

6

forbidden by the Constitution."  *United States v. Armstrong,* 517 U.S. 456, 463, 116 S. Ct. 1480, 1486 (1996).  The standard for proving such a claim "is a demanding one," as it "asks a court to exercise judicial power over" a matter as to which "[t]he Attorney General and the United States Attorneys retain broad discretion" — namely, the "enforce[ment] [of] the Nation's criminal laws."  *Armstrong,* 517 U.S. at 463-64, 116 S. Ct. at 1486 (internal quotation marks and citations omitted).  Thus, prosecutorial decisions are accorded a "presumption of regularity," and "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  517 U.S. at 464, 116 S. Ct. at 1486 (internal quotation marks and citations omitted).

In light of this considerable prosecutorial discretion, evidence of mere selectivity, without more, cannot sustain a claim of selective prosecution.  As the Sixth Circuit has explained:

> There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished.  The law does not need to be enforced everywhere to be legitimately enforced somewhere . . . .

*Futernick v. Sumpter Township,* 78 F.3d 1051, 1056 (6th Cir. 1996), *overruled on other grounds by Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S. Ct. 1073 (2000). Rather, a prosecutor's selectivity is subject to judicial oversight only if a defendant can show that he was "'singled . . . out' for punishment because of [his] membership in a

protected group or [because of] the exercise of a constitutionally protected right."
*Futernick,* 78 F.3d at 1056 (citations omitted); *see also Wayte v. United States,* 470 U.S.
598, 608, 105 S. Ct. 1524, 1531 (1985).

Selective prosecution claims are judged "according to ordinary equal protection
standards." *Wayte,* 470 U.S. at 608, 105 S. Ct. at 1531 (footnote omitted). Specifically,
to make out a claim of selective prosecution, a defendant "must demonstrate that the
federal prosecutorial policy had a discriminatory effect and that it was motivated by a
discriminatory purpose." *Armstrong,* 517 U.S. at 465, 116 S. Ct. at 1487; *see also United
States v. Hazel,* 696 F.2d 473, 474 (6th Cir. 1983); *United States v. Wallace,* 389 F.
Supp.2d 799, 801 (E.D. Mich. 2005). Moreover, because a defendant's discovery efforts
in aid of a claim of selective prosecution threaten to impinge upon prosecutorial
discretion and reveal prosecutorial strategies, such discovery will be permitted only if the
defendant produces "some evidence tending to show the existence of the essential
elements of the defense, discriminatory effect and discriminatory intent." *Armstrong,* 517
U.S. at 468. 116 S. Ct. at 1488 (internal quotation marks and citation omitted); *see also
United States v. Thorpe,* 471 F.3d 652, 657 (6th Cir. 2006); *Wallace,* 389 F. Supp.2d at
801.

Turning to the present case, in order to establish the "discriminatory effect" prong
of this standard, Defendant must make a "credible showing" that similarly situated
individuals outside the protected class — here, the class of those who have exercised their
First Amendment right of free speech — have avoided prosecution despite engaging in

8

the same or similar conduct.  *Armstrong,* 517 U.S. at 469-70, 116 S. Ct. at 1488-89.  In an

effort to make this showing, Defendant claims that "many thousands of individuals" have

engaged in the same conduct that forms the basis for the charges here — namely, filing

tax forms stating that they received no "wages," after their employers had filed W-2s

reporting the payment of wages to these individuals — but that he alone has been selected

for prosecution.  (*See* Defendant's 1/15/2009 Motion to Dismiss, Br. in Support at 5.)[6]

Yet, as support for this proposition, Defendant offers only the bare assertions of his

counsel, along with a citation to a list of "victories" reported on his website,

http://www.losthorizons.com, as achieved by readers of *Cracking the Code.*  Neither of

these sources qualifies as admissible evidence of similarly situated individuals who

engaged in the same or similar conduct but were not prosecuted.[7]

Moreover, Defendant's proposed universe of "similarly situated" individuals, even

if supported by evidence, is at once too broad and too narrow.  In determining whether a

---

[6]As noted earlier, Defendant initially stated that "very few" others had been prosecuted
for such conduct, (*id.*), but he has claimed in a subsequent submission that "[n]ot a single
individual other than Defendant who has filed forms 1040 or forms 4852 in light of the theories
set forth in Cracking the Code has been or is being prosecuted," (Defendant's 2/3/2009 Reply
Br. at 3).

[7]Among other evidentiary deficiencies, the reports of *Cracking the Code* readers as
recounted on Defendant's website are hearsay, and nothing on the website indicates that these
reports were authenticated in any way or that any effort was made to investigate the
circumstances behind any reported "victory."  Under this record, Defendant's claim of similarly
situated individuals who avoided prosecution is mere *ipse dixit.  See United States v. Ahee,* No.
99-1991, 5 F. App'x 342, 354 (6th Cir. Feb. 15, 2001) (rejecting a claim of selective prosecution
in a case brought under 26 U.S.C. § 7206(1), where the defendant offered only "hearsay
testimony that other persons who filed 'zero returns' were not prosecuted," but he did not
otherwise produce any evidence that these other individuals were similarly situated to him).

9

defendant and others are "similarly situated" for purposes of a claim of selective prosecution, "[t]he focus of an inquiring court must be on factors that are at least arguably material to the decision as to whether or not to prosecute," and a factor will be deemed "material" if it has "some meaningful relationship either to the charges at issue or to the accused" and therefore "might be considered by a reasonable prosecutor." *United States v. Lewis,* 517 F.3d 20, 27 (1st Cir. 2008); *see also United States v. Khan,* 461 F.3d 477, 498 (4th Cir. 2006) ("In deference to executive discretion, we have held that defendants are similarly situated when their circumstances present *no* distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." (internal quotation marks and citation omitted))  As the courts have recognized, "[a] multiplicity of factors legitimately may influence the government's decision to prosecute one individual but not another" — factors including, "inter alia, the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." *Lewis,* 517 F.3d at 27; *see also United States v. Smith,* 231 F.3d 800, 810 (11th Cir. 2000).

In this case, Defendant seeks to cast a wide net of those who are "similarly situated" to him by focusing solely upon the specific conduct charged in the indictment — *i.e.,* the filing of tax forms claiming zero wages after an employer has issued a W-2 reporting the payment of wages.  Yet, this does not begin to exhaust the considerations that a federal prosecutor could properly have taken into account in deciding that

10

Defendant should be prosecuted while others should not.  For instance, the statute that Defendant is charged with violating in this case prohibits the "willful[] mak[ing] and subscrib[ing]" of "any return, statement, or other document" which is "not believe[d] to be true and correct as to every material matter."  26 U.S.C. § 7206(1).  To the extent that this statute calls for an inquiry into the beliefs, state of mind, or motivations of the alleged violator, Defendant makes no secret of his motivation for filing the tax forms that provide the basis for the charges against him.  To the contrary, he openly acknowledges that his declarations of no wages in these forms were based upon the interpretation of the Internal Revenue Code he has set forth in *Cracking the Code.*  To the extent that the Government lacks comparable information about the state of mind, beliefs, or motivations of others who made reports of no wages, these other individuals cannot be deemed "similarly situated" to Defendant in all respects that are material to a decision to prosecute.  *See Wayte,* 470 U.S. at 612-13, 105 S. Ct. at 1533 (observing that the government's policy of prosecuting only those who reported their own refusals to register with the Selective Service System "promoted prosecutorial efficiency" and ensured that these prosecutions would proceed with "strong, perhaps conclusive evidence of the nonregistrant's intent not to comply"); *see also Smith,* 231 F.3d at 810 (citing the strength of the evidence as one of the factors to consider in determining whether two individuals are similarly situated).[8]

---

[8]At the present juncture, of course, the Court is not called upon to decide how (or whether) Defendant's avowed reliance on *Cracking the Code* might bear upon or aid the Government's effort to establish the elements of the charged § 7206(1) offenses, and the Court expresses no view on this subject.

11

Defendant also appears to be dissimilar in other respects from the individuals whose "victories" are anecdotally recounted on his website.  As one example, Defendant is charged in this case with repeatedly filing false tax forms over a several-year period in which he reported that he had received no wages, but he makes no effort to identify others who have avoided prosecution despite multiple "no wage" filings.  *See, e.g., United States v. Sutcliffe,* 505 F.3d 944, 954 (9th Cir. 2007) (finding that the defendant, who was charged with multiple counts of transmitting interstate threats to injure, was not similarly situated to another individual who had made only a single such threat); *Smith,* 231 F.3d at 812 ("The government can legitimately place a higher priority on prosecuting someone who commits an offense three, six or seven times, than someone who commits an offense once or twice.").  Next, while Defendant disclaims "any intent that any reader [of *Cracking the Code*] should rely upon the book . . . for instructions or advice," he does not shy away from claiming that "[t]housands of other individuals [have] read [his] analysis of the tax laws" in his book, that at least some of these readers have "filed tax forms consistent with that analysis," and that the IRS "has issued millions in refund checks to filers" as a result.  (Defendant's 1/15/2009 Motion to Dismiss, Br. in Support at 4 & n.4.) Defendant's prominent role as a leading proponent of and spokesperson for a particular interpretation of the Internal Revenue Code that has been adopted and put into practice by others, whether or not at Defendant's express urging or in accordance with his wishes, surely serves to distinguish him from those who have merely read and applied the teachings in his book, and the Government may properly consider the added deterrent

12

value of prosecuting such a visible proponent of conduct that the Government views as

unlawful.  *See Wayte,* 470 U.S. at 613, 105 S. Ct. at 1533 (noting the government's view

that "prosecuting visible nonregistrants" with the Selective Service was "an effective way

to promote general deterrence, especially since failing to proceed against publicly known

offenders would encourage others to violate the law"); *Lewis,* 517 F.3d at 27 (citing

deterrent value as a permissible consideration in selecting among candidates for

prosecution); *Smith,* 231 F.3d at 810 (same); *see also United States v. Adams,* 388 F.3d

708, 712 (9th Cir. 2004) (citing the defendant's organizing role in an unlawful gathering

of thousands of people as distinguishing him, for purposes of a claim of selective

prosecution, from those who merely attended the gathering).[9]

Yet, if Defendant's identification of "similarly situated" individuals is overly

broad in these respects, it is overly ***narrow*** in its exclusion of certain individuals who

***have*** been criminally prosecuted for conduct that qualifies as sufficiently similar to his

own.  In its response to Defendant's motion, the Government identifies the case of *United*

*States v. Menner,* No. 3:08-CR-322 (E.D. Va.), as a recent example of a criminal

_____

[9]The Court finds it noteworthy that Defendant cites the refunds paid to him and
"[h]undreds" of readers of his book as "underscor[ing] . . . the accuracy of his understanding of
the tax law[s]."  (Defendant's 5/22/2009 Suppl Br. at 2.)  In a similar vein, Defendant's book
includes a passage, entitled "First, A Pleasant Report," in which he characterizes the
Government's unwillingness to directly challenge his interpretation of "wages" under the federal
tax laws as "underscor[ing] the accuracy of the knowledge upon which [this interpretation] is
based."  Peter Eric Hendrickson, *Cracking the Code* 209-10 (2008 ed.).  Presumably, then, the
Government's prosecution of a leading and recognized proponent of this understanding of the
Internal Revenue Code, if successful, would serve as an effective message to the readers of
*Cracking the Code* that Defendant's understanding of the tax laws might ***not*** be accurate.  *See*
*Wayte,* 470 U.S. at 613, 105 S. Ct. at 1533.

13

prosecution under 26 U.S.C. § 7206(1) arising from the defendant's filing of tax forms in which he reported zero tax liability and failed to disclose the gross receipts or sales derived from his operation of a carpentry business.[10]  Although Defendant seeks to distinguish this case on the ground that defendant Menner was "an independent contractor" whose tax filings "failed, in several ways, to follow the theories set forth in Cracking the Code," (Defendant's 2/3/2009 Reply Br. at 3), he cites no authority for the proposition that other individuals cannot be deemed "similarly situated" unless they strictly adhere in every respect to his own construction of the Internal Revenue Code.[11]

In addition, the Court's survey of the case law has uncovered further examples of criminal prosecutions for tax offenses arising, at least in part, from claims that remuneration received from a private employer does not qualify as taxable "wages" within the meaning of the Internal Revenue Code.  In *United States v. Latham,* 754 F.2d 747, 749 (7th Cir. 1985), for instance, the defendant was convicted of willful failure to file income tax returns and filing false W-4 statements.  In affirming these convictions, the Seventh Circuit expressly addressed — and characterized as "a preposterous reading

---

[10]As described by the district court in that case, the evidence at trial revealed that the defendant had engaged in continual "spar[ring] with the IRS over such well-settled issues as the government's constitutional authority to levy a tax on his wages and whether his wages were income under the Internal Revenue Code." *Menner,* slip op. at 3 (E.D. Va. Feb. 26, 2009).

[11]For what it is worth, the Court notes that *Cracking the Code* includes a chapter in which Defendant argues that self-employed individuals working in the private sector — a category that apparently would encompass defendant Menner — generate no "net earnings from self-employment" within the meaning of the tax laws, and thus "need file no return regarding the proceeds of self-employment." *Cracking the Code* 82-87.

of the statute" — the defendant's proposed jury instruction indicating that "under 26

U.S.C. § 3401(c) the category of 'employee' does not include privately employed wage

earners." *Latham,* 754 F.2d at 750.[12]  Similarly, in a number of other cases charging

criminal violations of the Internal Revenue Code, the defendants' failure to file tax

returns or filing of "zero income" returns was predicated on their stated beliefs that their

wages did not qualify as taxable income.  *See, e.g., Cheek v. United States,* 498 U.S. 192,

195-96 & nn. 3, 5, 111 S. Ct. 604, 607-08 & nn. 3, 5 (1991); *United States v. Sassak,* 881

F.2d 276, 277 (6th Cir. 1989); *United States v. Anthony,* 545 F.3d 60, 63 (1st Cir. 2008);

*United States v. Ellett,* 527 F.3d 38, 39 (2d Cir. 2008); *United States v. Brooks,* 174 F.3d

950, 954 (8th Cir. 1999); *United States v. Stafford,* 983 F.2d 25, 26 (5th Cir. 1993);

*United States v. Collins,* 920 F.2d 619, 621 (10th Cir. 1990); *United States v. Baur,* No.

91-1868, 1993 WL 339707, at *2 (6th Cir. Sept. 1, 1993); *United States v. Boling,* No.

87-5051, 1988 WL 3477, at *1 (6th Cir. Jan. 19, 1988).[13]  In light of this case law, and in

light of Defendant's failure to produce any cognizable evidence in support of his assertion

---

[12]*Cracking the Code* advances an analogous reading of § 3401(c).  *See Cracking the Code* 75-76.

[13]Beyond these criminal prosecutions, the case law reveals that the Government has pursued civil remedies against a number of individuals — including, of course, Defendant himself, *see United States v. Hendrickson,* No. 06-11753 (E.D. Mich.) (Edmunds, J.)  — who have expressly relied upon the analysis in *Cracking the Code* as grounds for preparing tax returns or other tax forms in which private-sector wages are not reported as income.  *See, e.g., United States v. Gray,* No. 1:07-CV-42, 2008 WL 907384, at *2 (W.D. Mich. Feb. 29, 2008); *United States v. Nunn,* No. 06-1458, 2006 WL 2663783, at *1-*3 (D. Ariz. Aug. 18, 2006); *United States v. Hill,* No. 05-877, 2005 WL 3536118, at *4-*5 & n.2 (D. Ariz. Dec. 22, 2005), *aff'd,* 197 F. App'x 613 (9th Cir. 2006).  Plainly, then, the Government's enforcement efforts against Defendant's reading of the tax code are not directed solely at Defendant himself.

that other, similarly situated individuals have not been prosecuted despite engaging in similar conduct, the Court finds that Defendant has failed to establish the "discriminatory effect" prong of his claim of selective prosecution.

The Court further concludes that Defendant has not made a sufficient showing under the second, "discriminatory intent" prong of the selective prosecution standard to warrant discovery in support of this claim. In an effort to make this requisite showing, Defendant posits that the Government has selected him for prosecution for the impermissible purpose of "curtail[ing] [his] exercise of his free speech right to write, publish and distribute his book analyzing the tax laws of the United States." (Defendant's 1/15/2009 Motion to Dismiss, Br. in Support at 6.) Yet, as evidence of this impermissible motive, Defendant relies almost exclusively on his claim, discussed above, that he alone has been selected for prosecution "from a broad universe of individuals" who have engaged in similar conduct. (*Id.*) As explained earlier, this claim lacks evidentiary support and is refuted by the case law.[14]

Moreover, a number of courts have rejected claims that the Government engages in

_____

[14]As additional "proof" of the Government's purported motive to penalize his exercise of First Amendment rights, Defendant points to the IRS's abandoned 2004 investigation into allegations that Defendant was promoting abusive tax shelters, as well as the 2006 civil suit in which the Government sought (successfully) to recover tax refunds paid to Defendant for the 2002 and 2003 tax years and secured a permanent injunction prohibiting Defendant from filing tax forms based on his analysis in *Cracking the Code.* As noted earlier, however, *see supra* n.13, and as observed by the Government in its response to Defendant's motion, (*see* Gov't 1/28/2009 Response Br. at 6 & n.3), these civil enforcement efforts were not directed at Defendant alone, but also encompassed individuals who merely chose to apply the teachings in Defendant's book. The Court fails to see, then, how these civil enforcement efforts tend to establish a Government motive to single out and penalize Defendant for his exercise of First Amendment rights.

impermissible selective prosecution by targeting vocal or prominent tax evaders or protestors.  In one such case, *United States v. Hazel,* 696 F.2d 473, 474 (6th Cir. 1983), defendants Dean Hazel and James Lott were convicted of income tax-related offenses "aris[ing] out of a self-described 'tax revolt' in Michigan which Hazel and Lott claim[ed] to have 'co-founded.'"  Hazel and Lott sought the dismissal of the charges against them on grounds of selective prosecution, arguing that 34 other members of the "tax revolt" group they founded had committed similar tax offenses but had not been prosecuted, and that they had been "singled out from this group because they were 'outspoken and vocal' about their activity."  *Hazel,* 696 F.2d at 475.

While acknowledging that the failure to prosecute others might suffice to make a "colorable" showing of discriminatory effect, the Sixth Circuit held that the defendants had failed to establish discriminatory intent.  *Hazel,* 696 F.2d at 475.  In so ruling, the court emphasized that "even if Hazel and Lott had conclusively proven their charge that the Government initiated prosecution because of the great notoriety of their protests, that fact would not, as a matter of law, be an impermissible basis for prosecution."  696 F.2d at 475.  Quoting from a "case directly on point" decided by the Eighth Circuit, the court explained:

> Defendant's theory is *not* that he has been singled out for prosecution solely because he has protested the war and tax policies of the government.  Rather, he objects to his prosecution only on the basis that he was selected due to the *publicity* his protests have received.  The decision to prosecute, therefore, rests upon the amount of publicity one's protests receive, not upon the exercise of one's first amendment right to free speech. Such a decision is not based upon an impermissible ground but rather serves

17

> a legitimate governmental interest in promoting public compliance with the tax laws. The government is entitled to select those cases for prosecution which it believes will achieve this objective. The prosecution of the defendant clearly falls within this range of prosecutorial discretion.

*Hazel,* 696 F.2d at 475 (quoting *United States v. Catlett,* 584 F.2d 864, 868 (8th Cir. 1978)); *see also Schehl v. Commissioner,* 855 F.2d 364, 367 (6th Cir. 1988) (holding that the IRS could properly have selected a vocal "war-tax resister" for administrative enforcement measures and the imposition of civil penalties in order to promote greater compliance with the tax code).

Other circuits have similarly concluded that the selective prosecution of vocal or prominent tax protestors or evaders, standing alone, is not an impermissible infringement upon First Amendment rights. In *United States v. Rice,* 659 F.2d 524, 527 (5th Cir. 1981), for example, the Fifth Circuit observed that it has "consistently rejected" claims of selective prosecution advanced by tax protestors:

> We noted [in an earlier case] that selective enforcement of the law is not in itself a constitutional violation, in the absence of invidious purpose. We also held that selection of cases for close investigation and for prosecution (only if illegal conduct is discovered) is not impermissible simply because focused upon those most vocal in a concerted effort to encourage violation of the nation's tax laws. The government's prosecution of tax protestors as a group merely indicates a valid interest in punishing violators who flagrantly and vocally break the law. The selection for prosecution based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws. Since the government lacks the means to investigate every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media. For similar reasons, it is not unconstitutionally selective to focus for investigative purposes upon a group that on objective examination is much more likely than at random to have committed tax illegalities openly approved by them.

18

*Rice,* 659 F.2d at 527 (internal quotation marks and citations omitted).  Similarly, in rejecting the claims of two defendants that they were impermissibly selected for prosecution because of their "outspoken" protests against the federal tax laws, the Tenth Circuit concurred in the reasoning of the court below that "it would be anomalous if an individual were immunized from prosecution merely because his protest is against the very law which he is violating or because the Government has not prosecuted everyone who has violated the same law."  *United States v. Amon,* 669 F.2d 1351, 1355, 1357 (10th Cir. 1981); *see also United States v. Kelley,* 769 F.2d 215, 218 (4th Cir. 1985) ("There is no impermissible selectivity in a prosecutorial decision to prosecute the ringleader and instigator, without prosecuting his foolish followers, when a prosecution of the instigator can be expected to bring the whole affair to an end."); *United States v. Stout,* 601 F.2d 325, 328 (7th Cir. 1979) ("Aggressively displaying one's antipathy to the income tax system or daring the government to enforce it does not create immunity from, or a defense to, prosecution."); *Catlett,* 584 F.2d at 867 ("While the decision to prosecute an individual cannot be made in retaliation for his exercise of his first amendment right to protest government war and tax policies, the prosecution of those protestors who publicly and with attendant publicity assert an alleged personal privilege not to pay taxes as part of their protest is not selection on an impermissible basis.").  Under this case law, then, a policy of selecting vocal or prominent tax protestors for prosecution is considered a legitimate prosecutorial practice — selective, to be sure, but neither invidious nor implemented in bad faith.

19

In an effort to distinguish this uniform weight of authority, Defendant insists that he "is not a tax protestor or a tax defier," that *Cracking the Code* "is not an anti-tax tract," that he "is not opposed to the income tax laws of the United States," and that, by writing his book, he did not intend to make "a political protest against the tax laws" or to foment "civil disobedience." (Defendant's 5/22/2009 Suppl. Br. at 1.) Rather, he characterizes *Cracking the Code* as a neutral and scholarly "study of the tax laws of the United States," in which he sets forth his "honest, well-researched understanding of the law." (*Id.* at 2.) Thus, he views *Hazel* and the other above-cited decisions as inapposite, as each of these cases involved defendants "who were deliberately violating the law in order to protest" against some aspect of the federal tax laws, the policies behind them, or the wars being funded with federal tax dollars. (*Id.* at 1-2.) Here, in contrast, Defendant submits that he "is being punished for the exercise of his First Amendment rights, while similarly situated individuals, even flagrant and prominent tax law violators, who have written no books, have not been prosecuted." (*Id.* at 3-4.) To the extent that he has achieved any prominence or notoriety, Defendant insists that this is due, not to his own efforts, but to "the actions of the Internal Revenue Service which chose to make him #1 on its Dirty Dozen List and has publicized any civil case against him which seems to favor the IRS (while ignoring those which do not)." (Defendant's 2/3/2009 Reply Br. at 4.)

This attempted distinction misses the mark on a number of grounds. First, Defendant's own views of what he sought to accomplish by authoring, publishing, and promoting *Cracking the Code* have no evident bearing upon the relevant issue here —

20

namely, the **Government's** purpose and motives in selecting Defendant for prosecution. Even if the Government is mistaken in viewing *Cracking the Code* as the work of a "recidivist tax defier and felon who has persisted in his anti-tax activities," (Gov't 1/28/2009 Response Br. at 2), the above-cited case law does not turn upon the ***accuracy*** of the prosecutor's assessment of a particular defendant as a prominent or vocal tax protestor.  Under these decisions, the Government may permissibly direct its prosecutorial efforts against those who it views as visible or outspoken proponents of activity that it believes to be unlawful, and there is no requirement that the Government correctly identify and focus upon only those individuals who are the most vocal opponents of federal law or policy.[15]

In any event, whether Defendant is more properly characterized as a "protestor" or a "scholar," the Government has precisely the same legitimate interest in prosecuting him. Regardless of whether Defendant has affirmatively sought notoriety, fame, or publicity, and regardless of whether he has urged others to follow his lead or has instead attempted to dissuade them from doing so, he acknowledges that "thousands" of people have read *Cracking the Code,* that a significant number of these readers have "filed tax forms consistent with" his analysis of the tax laws as elucidated in this book, and that this has resulted in the IRS issuing "millions in refund checks to filers who had claimed that

---

[15]Indeed, as discussed below, such a requirement would seem to be more, not less, constitutionally problematic, as it would focus the Government's prosecutorial efforts on those who are the most outspoken critics of federal officials, law, or policy, despite the fact that criticism of the government lies at the heart of the First Amendment protection of free speech.

money was improperly withheld."  (Defendant's 1/15/2009 Motion to Dismiss, Br. in Support at 3 (footnote omitted).)  Under these circumstances, the Government could permissibly conclude that the prosecution of Defendant would serve as an effective deterrent to those who might be inclined to apply his analysis to their own tax filings, and that this might staunch the flow of more widespread, but potentially harder to detect, submission of "zero wage" tax forms by readers of *Cracking the Code*.  *See Kelley, supra,* 769 F.2d at 218.  Indeed, the courts have recognized that prominence alone — whether derived from protest activities or from political or social stature in the community — is a permissible factor in selecting individuals for prosecution.  *See, e.g., United States v. Hastings,* 126 F.3d 310, 314-15 (4th Cir. 1997) ("[A] person's public renown may be properly considered among other factors when deciding whether to pursue criminal sanctions for a violation of the law.").[16]

Finally, the Court fails to see how Defendant could possibly strengthen his appeal to First Amendment principles, and thereby distinguish the rulings in *Hazel* and the other above-cited cases, by denying that he has engaged in any sort of protest against the Government, its laws, or its tax policies.  These decisions, after all, do not recognize the Government's right to prosecute a defendant ***because of*** his or her protected First

---

[16]Notably, by citing Treasury Secretary Timothy Geithner and former Senate Majority Leader Tom Daschle as individuals who have "blatantly and admittedly violated the tax laws" but have nonetheless avoided criminal prosecution, (Defendant's 5/22/2009 Suppl. Br. at 3), Defendant implicitly acknowledges the value of prosecuting prominent violators of the tax laws, regardless of whether such violations stem from any opposition to those laws.  That the Government has failed to prosecute all such prominent violators surely does not detract from its legitimate interest in doing so in a particular case.

Amendment activity, but *in spite of* this protected activity.  The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964).  Moreover, the Supreme Court has emphasized that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S. Ct. 663, 668 (1978).  The law of selective prosecution rests upon precisely these principles, permitting limited judicial inquiry into a matter that ordinarily "rests entirely in [the prosecutor's] discretion" — namely, "the decision whether or not to prosecute," *Bordenkircher,* 434 U.S. at 364, 98 S. Ct. at 668 — in order to ensure that the exercise of this discretion remains within "constitutional constraints," *Wayte,* 470 U.S. at 608, 105 S. Ct. at 1531 (internal quotation marks and citation omitted).  Under this law, a prosecutor has no greater (or lesser) latitude, and the relevant constitutional constraints are no weaker (or stronger), when the subject of prosecutorial discretion is a vehement protestor against the government than when he or she is engaged in scholarly discourse.  To hold otherwise would be to permit what the law of selective prosecution is designed to prohibit — namely, prosecutorial decisions based upon the nature or content of an individual's protected First Amendment expression.

Plainly, then, it is of no aid to Defendant to establish that he is a scholar engaged

23

in a neutral study of the tax code, rather than a critic of or protestor against federal tax

law or policy.  Both "abstract discussion" and "vigorous advocacy" qualify as protected

forms of expression under the First Amendment, *see N.A.A.C.P. v. Button,* 371 U.S. 415,

429, 83 S. Ct. 328, 336 (1963), so the proper disposition of Defendant's claim of selective

prosecution cannot turn upon the characterization of *Cracking the Code* as one or the

other.  In either event, Defendant's burden is precisely the same — to show that he was

selected for prosecution on the impermissible basis of his protected speech, and not on

grounds (such as prominence) that the Government may legitimately consider.  As

explained, Defendant has not made a sufficient showing on this point to warrant

discovery on his claim of selective prosecution, much less dismissal of the charges

against him on this ground.[17]

## B.  Defendant Has Failed to Show That His Prosecution Represents an Impermissible and Unconstitutional Attempt to Compel Him to Make Statements He Believes Are Untrue, or to Punish Him for His Refusal to Make Such Statements.

The precise basis for Defendant's next challenge to the indictment is difficult to

discern, not least because he has utterly failed to identify any case law support for this

challenge.[18]  Defendant states that this challenge rests upon the First and Fifth

---

[17]Defendant's motion also makes passing reference to a claim of vindictive prosecution.
Yet, as the Government points out, Defendant has not presented any legal analysis in support of
this claim, nor has he attempted to marshal the requisite evidentiary support for such a claim.
Accordingly, the Court deems this claim abandoned.

[18]While Defendant faults the Government for "misunderstanding [his] argument" and
maintains that "[n]one of the cases cited by the government address [this] argument,"
(Defendant's 2/3/2009 Reply Br. at 5-6), the Government's confusion is understandable under

Amendments, and that it arises from the self-reporting nature of the federal income tax laws, under which each taxpayer is called upon to disclose the amount of "wages" he or she has received and to declare under penalty of perjury that this wage information is complete and correct.  Because Defendant asserts, based on his study of federal tax law, that he earned no "wages" within the meaning of the Internal Revenue Code during the years at issue here, he filed tax forms with the IRS in which he declared under penalty of perjury that he had received no wages, and it is these submissions that give rise to the charges in this case.  In Defendant's view, these charges implicate free speech and due process concerns, as they force an individual in his position and with his beliefs to make an untenable choice between (i) falsely swearing to the truth of something he does not believe — *i.e.,* that he received "wages" within the meaning of the tax code, or (ii) facing criminal charges for stating his belief that he did not receive any such "wages."  As explained below, however, the dilemma faced by Defendant does not transgress any First or Fifth Amendment protections under the circumstances presented here.

    As a threshold matter, Defendant's argument rests upon a misconception of the nature of the charges brought against him in this case.  As observed earlier, Defendant is charged with violating a statutory prohibition against the "willful[] mak[ing] and subscrib[ing]" of "any return, statement, or other document" which is "not believe[d] to be true and correct as to every material matter."  26 U.S.C. § 7206(1).  In the context of

_____

the circumstances.

criminal violations of the Internal Revenue Code, the Supreme Court has held that the element of willfulness "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek,* 498 U.S. at 201, 111 S. Ct. at 610; *see also United States v. Pomponio,* 429 U.S. 10, 12, 97 S. Ct. 22, 24 (1976) (stating that willfulness as used in § 7206(1) "means a voluntary, intentional violation of a known legal duty"); *United States v. Tarwater,* 308 F.3d 494, 510 (6th Cir. 2002) (approving jury instructions that "[t]he word 'willfully,' as used in [§ 7206(1)], means a voluntary, intentional violation of a known legal duty," and that "the defendant must have acted voluntarily and intentionally and with the specific intent to do something he knew the law prohibited"). The Court has explained that its "consistent interpretation of the word 'willfully' to require an element of *mens rea* implements the pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers." *United States v. Bishop,* 412 U.S. 346, 361, 93 S. Ct. 2008, 2017 (1973).

This statutory requirement of "willful[ness]" protects against Defendant's concern that he faces criminal conviction for refusing to sign what he believed to be a "false jurat" stating that the "wages" reported by his employer were correct, and instead submitting forms reflecting "his best knowledge and belief that he had earned no 'wages' as that term is defined in the tax laws." (Defendant's 2/3/2009 Reply Br. at 6.) As the Supreme Court has explained, the Government must surmount this claim of Defendant's "best

knowledge and belief" in order to secure a conviction in this case:

> [I]f the Government proves actual knowledge of the pertinent legal duty, the prosecution, without more, has satisfied the knowledge component of the willfulness requirement. But carrying this burden requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws. This is so because one cannot be aware that the law imposes a duty upon him and yet be ignorant of it, misunderstand the law, or believe that the duty does not exist. In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable.
>
> In this case, if [defendant] Cheek asserted that he truly believed that the Internal Revenue Code did not purport to treat wages as income, and the jury believed him, the Government would not have carried its burden to prove willfulness, however unreasonable a court might deem such a belief. Of course, in deciding whether to credit Cheek's good-faith belief claim, the jury would be free to consider any admissible evidence from any source showing that Cheek was aware of his duty to file a return and to treat wages as income, including evidence showing his awareness of the relevant provisions of the Code or regulations, of court decisions rejecting his interpretation of the tax law, of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return forms and accompanying instructions that made it plain that wages should be returned as income.

*Cheek,* 498 U.S. at 202, 111 S. Ct. at 610-11 (footnote omitted); *see also Tarwater,* 308 F.3d at 510 (holding that the district court did not err in refusing to give a separate "good faith" instruction because "[t]he jury's conclusion that [the defendant] acted willfully would necessarily negate any possibility of 'good faith' in filing false tax returns"); *Sassak,* 881 F.2d at 280 (finding that the district court's jury instructions on willfulness "adequately addresse[d] [the defendant's] concern" that "the jury might have believed

27

that he could not, under the law, have had a good faith belief in a concept so unorthodox as the nontaxability of wages," so that a separate "good faith belief" instruction was not necessary).

Under § 7206(1) as construed by the courts, then, Defendant need not fear conviction for undertaking in good faith to understand the obligations imposed on taxpayers by the Internal Revenue Code, and then filing tax forms that comported with this understanding.  If, on the other hand, the Government meets its burden of establishing beyond a reasonable doubt that Defendant "willfully" filed tax forms under penalty of perjury "which he d[id] not believe to be true and correct as to every material matter," 26 U.S.C. § 7206(1), then Defendant cannot tenably complain that his conviction would rest upon any protected First Amendment activity.  *See Cheek,* 498 U.S. at 202 n.8, 111 S. Ct. at 611 n.8 (noting the defendant's concessions in that case that "a defendant who knows what the law is and who disagrees with it does not have a bona fide misunderstanding defense," and that he was "in no way suggesting that Cheek or anyone else is immune from criminal prosecution if he knows what the law is, but believes it should be otherwise, and therefore violates it" (internal quotation marks and citations omitted)); *Sassak,* 881 F.2d at 280 (upholding a district court's instructions that "[w]hile the defendant's conduct is not willful if he acted through a good faith misunderstanding of the requirements of the law, a good faith disagreement with the law is not a defense").  Indeed, Defendant himself evidently recognizes as much, disclaiming in his reply brief any argument "to the effect that the constitutional right of free speech protects the making

of false statements in a tax return." (Defendant's 2/3/2009 Reply Br. at 6.) Since this is, in essence, what the Government must prove in this case, *see Tarwater,* 308 F.3d at 506 (noting that "section 7206(1) is a perjury statute"), Defendant's First Amendment challenge lacks merit.[19]

Moreover, once Defendant's challenge is properly framed against this backdrop of statutory language and judicial interpretation, the Court finds that the case law cited by the Government is entirely on point, establishing that "speech is not protected by the First Amendment when it is the very vehicle of the crime itself." *United States v. Varani,* 435 F.2d 758, 762 (6th Cir. 1970) (citing as one example the federal perjury statute, 18 U.S.C. § 1621). As observed in one of the decisions identified by the Government, "[t]he consensus of this and every other circuit is that liability for a false or fraudulent tax return cannot be avoided by evoking the First Amendment." *United States v. Rowlee,* 899 F.2d 1275, 1279 (2d Cir. 1990) (citing, among other cases, *Collett v. United States,* 781 F.2d 53, 54-55 (6th Cir. 1985)). Similarly, in affirming a conviction of aiding and abetting the filing of false tax returns in violation of § 7206(2), the Ninth Circuit explained that "the

---

[19]The statutory requirement of willfulness also alleviates Defendant's concern that the charges in this case might have a "potential chilling effect" on the free speech and due process rights of others by "forc[ing] all individuals who disagree with statements made [by their employers] on a w-2 . . . into adopting those statements as their own sworn testimony, lest they be criminally charged as Defendant has been." (Defendant's 2/3/2009 Reply Br. at 7.) Again, the success of any such criminal charges would depend on the basis for such an individual's "disagree[ment]" with an employer's report of wages, and the Government would have to prove willfulness in each such case it elected to bring. Moreover, in meeting this burden, it would not be enough for the Government to show that this individual shared the same beliefs as someone who previously was tried and convicted of a § 7206(1) violation, since each such person potentially could arrive at these beliefs via a different path.

First Amendment is quite irrelevant if the intent of the actor and the objective meaning of the words used are so close in time and purpose to a substantive evil as to become part of the ultimate crime itself." *United States v. Freeman,* 761 F.2d 549, 552 (9th Cir. 1985). "In those instances, where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone." *Freeman,* 761 F.2d at 552.

Again, Defendant's only answer to this uniform weight of authority is that he does not claim any constitutional right to make false statements on tax forms. Rather, he maintains that the charges in this case infringe upon his protected First Amendment right to submit tax forms that reflect his "best knowledge and belief" of the dictates of the tax code. As explained, the statutory requirement of willfulness leaves room for just this sort of good faith or honest belief that one is acting in compliance with federal tax law. By bringing this prosecution, the Government evidently believes that it can overcome this claim of good faith belief and prove a willful violation of § 7206(1), and it must be given an opportunity to do so. Whether the Government succeeds or fails, this effort poses no risk that Defendant will be punished for protected First Amendment activity.

## C.   The Indictment Adequately Alleges Each Element of the Charged § 7206(1) Offenses.

The grounds for Defendant's next motion seeking dismissal of the indictment are once again somewhat difficult to discern, and appear to have evolved with the two briefs filed in support of this motion. In his initial brief in support of his May 5, 2009 motion to

30

dismiss, Defendant identifies the alleged defect in the indictment as its "fail[ure] to adequately allege each element of" the charged § 7206(1) offenses.  (Defendant's 5/5/2009 Motion to Dismiss at ¶ 3; *see also* Br. in Support at 6-7.)  In his reply brief, however, Defendant calls upon the Court to decide "whether the Grand Jury was properly instructed as to each and every element" of the charged offenses,  (Defendant's 5/21/2009 Reply Br. at 2), so that he and the Court may be sure that the grand jury's determination of probable cause rested upon a correct understanding of these elements.  As explained below, regardless of which of these challenges Defendant seeks to pursue, the indictment in this case survives scrutiny.

The starting point of the Court's inquiry, once again, is the language of the statute that Defendant is charged with violating.  This statute prohibits "[a]ny person" from "[w]illfully mak[ing] and subscrib[ing] any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." 26 U.S.C. § 7206(1).  Each of the ten counts of the indictment charges Defendant with violating this statute.  Although the details differ from one count to the next, the allegations set forth in Count One of the indictment are typical:

> On or about November 18, 2002, in the Eastern District of Michigan, defendant PETER HENDRICKSON, a resident of Commerce Township, Michigan, did willfully make and subscribe an Individual Income Tax Return, Form 1040 for the calendar year 2000, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said document defendant PETER HENDRICKSON did not believe to be true and correct as to every

31

material matter in that the said 2000 Individual Income Tax Return, Form 1040 reported that he had received no wages, whereas, as he then and there well knew, he had, in fact, received wages in the approximate amount of $51,666 during calendar year 2000.

(11/12/2008 Indictment, Count One at ¶ 2.)

On the face of it, the indictment certainly appears to allege each of the elements of a § 7206(1) offense.  As the Government observes, these elements are:

> (i)  that the defendant made and subscribed a return, statement, or other document which was false as to a material matter;

> (ii)  that the return, statement, or other document contained or was verified by a written declaration that it was made under the penalties of perjury;

> (iii)  that the defendant did not believe the return, statement, or other document was true and correct as to every material matter; and

> (iv)  that the defendant acted willfully in falsely making and subscribing the return, statement or other document — that is, in voluntary and intentional violation of a known legal duty.

26 U.S.C. § 7206(1); *see also United States v. Bishop,* 412 U.S. 346, 350, 360, 93 S. Ct. 2008, 2012, 2017 (1973).  Each count of the indictment seemingly alleges each element of this offense by (i) identifying the return, statement, or document that is alleged to be false, (ii) alleging that each such return, statement, or document was verified by a written declaration that it was made under the penalties of perjury, (iii) alleging that Defendant did not believe this return, statement or document to be true as to every material matter, (iv) identifying the material matter as to which each such return, statement, or document allegedly was not true and correct — namely, its report that Defendant had received no

32

wages, and (v) alleging that Defendant acted willfully by reporting that he had received

no wages when "he then and there well knew" that he had, in fact, received wages.

The Supreme Court has explained that "an indictment is sufficient if it, first,

contains the elements of the offense charged and fairly informs a defendant of the charge

against which he must defend, and, second, enables him to plead an acquittal or

conviction in bar of future prosecutions for the same offense." *Hamling v. United States,*

418 U.S. 87, 117, 94 S. Ct. 2887, 2907 (1974). In further elucidating this standard, the

Sixth Circuit has held that "[a]n indictment will usually be sufficient if it states the

offense using the words of the statute itself, as long as the statute fully and

unambiguously states all the elements of the offense." *United States v. Superior Growers*

*Supply, Inc.,* 982 F.2d 173, 176 (6th Cir. 1992). The court cautioned, however, that while

the "language of the statute may be used in the general description of the offense," it

nonetheless "must be accompanied with such a statement of the facts and circumstances

as will inform the accused of the specific offense . . . with which he is charged." *Superior*

*Growers Supply,* 982 F.2d at 176 (internal quotation marks and citation omitted).

The indictment in this case readily satisfies these standards. In setting forth the

elements of the charged offenses, the indictment expressly invokes the language of §

7206(1) itself, including each of the statutory requirements identified above. It then links

this statutory language to specific activities in which Defendant allegedly engaged,

identifying (i) the particular returns, statements, or other documents that allegedly were

false as to a material matter, and (ii) the specific material matter (*i.e.,* wages) as to which

33

Defendant did not believe the relevant return, statement, or document to be true.  In light of these clear and straightforward allegations in the indictment, Defendant cannot seriously claim any lack of notice as to the charges against him or their factual basis. Accordingly, to the extent that Defendant's motion rests upon his Sixth Amendment right "to be informed of the nature and cause of the accusation," U.S. Const. amend. VI, and the similar dictates of Fed. R. Crim. P. 7(c)(1), this challenge cannot succeed.  *See Superior Growers Supply,* 982 F.2d at 176 (emphasizing that "[t]he Notice Clause of the Sixth Amendment, as protected by Fed. R. Crim. P. 7(c), guarantees a criminal defendant the right to be informed of the charges brought against him" (footnotes omitted)).

Yet, Defendant's true objection, it seems, is not with the language of the indictment, but instead rests upon a concern that the grand jury might not have been sufficiently informed about the elements of a § 7206(1) offense to make a reliable determination of probable cause.  As reframed in his reply brief, Defendant's motion seeks a judicial inquiry into the instructions the grand jury was given, to ensure that "the Grand Jury was properly instructed as to each and every element and did find probable cause as to each and every element" of the charged offenses.  (Defendant's 5/21/2009 Reply Br. at 2.)  In particular, Defendant argues that certain terms found in § 7206(1) or implicated by the specific charges against him — *i.e.,* "person," "wages," "employee," and "employment" — are not given their ordinary everyday meanings under a proper understanding of the Internal Revenue Code, and he questions whether the grand jury was apprised of the "true" meanings of these terms as it decided whether to hand down the

34

present indictment.

This challenge could be understood in one of two ways. First, Defendant could be arguing that the facts presented to the grand jury and alleged in the indictment fail to state a criminal offense under a proper reading of § 7206(1) and the other relevant provisions of the Internal Revenue Code. This would explain Defendant's appeal to Fed. R. Crim. P. 12(b) in his motion, as this provision authorizes a defendant to bring a pretrial motion arguing that the indictment fails "to state an offense." Fed. R. Crim. P. 12(b)(3)(B). Alternatively, Defendant's motion could be construed as questioning the validity of the grand jury's finding of probable cause, in the absence of evidence that the grand jury was properly instructed as to the particularized meanings of such terms as "person" and "wages" under the tax code.

The first of these two possible readings of Defendant's motion is implausible and must be rejected. Within two days after this motion was filed, Defendant brought a separate motion in which he expressly argues that the indictment fails to state an offense because he is not a "person" within the meaning of § 7206(1).[20] The present motion, then, must be intended as something other than a substantive challenge under Rule 12(b)(3)(B) to the sufficiency of the indictment's allegations to sustain charges under § 7206(1); to hold otherwise would render Defendant's separate motion wholly duplicative. In addition, Defendant and his counsel have demonstrated through this separate motion that

---

[20]This motion is addressed below.

35

they know how to launch a direct substantive attack on the charges brought in the indictment. Against this backdrop, it seems evident — and Defendant's reply brief appears to confirm — that Defendant seeks a judicial inquiry into the manner in which the grand jury was instructed about the law governing the charged § 7206(1) offenses.

The law is clear, however, that Defendant is not entitled this inquiry. The Supreme Court has held that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . , if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States,* 350 U.S. 359, 363, 76 S. Ct. 406, 409 (1956) (footnote omitted). In so ruling, the Court reasoned:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury . . . .
>
> Petitioner urges that this Court should exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.

*Costello,* 350 U.S. at 363-64, 76 S. Ct. at 408-09; *see also United States v. Short,* 671 F.2d 178, 181-83 (6th Cir. 1982).

36

Defendant insists that this reasoning is inapposite, however, because he is not challenging the sufficiency of the *evidence* presented to the grand jury, but instead is questioning whether the grand jury was properly *instructed* as to the applicable law. Yet, the courts have declined to draw the distinction proposed by Defendant. In *United States v. Overmyer,* 899 F.2d 457, 465 (6th Cir. 1990), for example, the defendant sought dismissal of the indictment on the grounds that "the prosecutor made a misleading suggestion to the grand jury" and "provided the grand jury with erroneous and incomplete instructions." The court affirmed the district court's refusal to dismiss the indictment, explaining that "[c]ourts do not encourage tampering with the grand jury indictment even where faulty instructions are given." *Overmyer,* 899 F.2d at 465. A number of other courts have reached the same conclusion, rejecting challenges to indictments or requests for judicial scrutiny of the instructions given to grand juries on the ground that "[t]he prosecutor is under no obligation to give the grand jury legal instructions." *United States v. Zangger,* 848 F.2d 923, 925 (8th Cir. 1988); *see also United States v. Lopez-Lopez,* 282 F.3d 1, 8-9 (1st Cir. 2002); *United States v. Kenny,* 645 F.2d 1323, (9th Cir. 1981) (observing that indictments are "normally prepared by the prosecutor, who is presumably acquainted with the 'applicable law,'" and finding that nothing in the Constitution "imposes the additional requirement that grand jurors receive legal instructions"); *United States v. Graham,* 247 F. Supp.2d 923, 924-26 (S.D. Ohio 2002); *United States v. Felice,* 481 F. Supp. 79, 82 (N.D. Ohio 1978), *conviction aff'd,* 609 F.2d 276 (6th Cir. 1979). Defendant has failed to identify any authority to the contrary, and his motion therefore

37

must be denied.[21]

## D.    Defendant Is a "Person" Within the Meaning of § 7206(1).

As his final ground for seeking dismissal of the indictment, Defendant mounts a

direct substantive challenge to the charges brought against him under 26 U.S.C. §

7206(1).  In particular, this statute prohibits "[a]ny person" from willfully making and

subscribing a return, statement, or other document that is false as to a material matter, but

Defendant contends that "both the language of the statute and case law decided under it

exclude [him] from the class of 'persons' subject to the duty imposed by that statute."

(Defendant's 5/7/2009 Motion to Dismiss at ¶ 2.)  As explained below, however, the

Court finds that the pertinent definitional provisions of the Internal Revenue Code quite

clearly specify that individuals such as Defendant are "persons" within the meaning of §

7206(1).  Moreover, not only has Defendant failed to supply the promised case law, but

the Court's research reveals that the case law is uniformly *against* his position.

The term "person," as used in § 7206, is defined as follows:

The term "person" as used in this chapter includes an officer or
employee of a corporation, or a member or employee of a partnership, who

---

[21]For what it is worth, it seems doubtful, to say the least, that the grand jury would have
been instructed in accordance with Defendant's understanding of the Internal Revenue Code.  At
one point in its response to Defendant's motion, the Government characterizes Defendant's
favored interpretation of the term "employee" as "twisted," and it elsewhere refers to
Defendant's "idiosyncratic approach to statutory interpretation."  (Gov't 5/13/2009 Response Br.
at 4 n.2, 5.)  As explained earlier, if Defendant believes that his reading of the Internal Revenue
Code is correct and that the Government's is wrong, he can bring a direct challenge seeking
dismissal of the indictment for failure to state a criminal offense under a proper construction of
the tax code.  Indeed, the Court turns next to Defendant's motion in which he advances an
argument of precisely this sort.

as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

26 U.S.C. § 7343.  Elsewhere in the Internal Revenue Code, however, there is another definition of "person" that, by its terms, is meant to be generally applicable throughout the Code:

> When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof —
>
> (1) **Person.**— The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

26 U.S.C. § 7701(a)(1).  Under this plain language, then, an individual such as Defendant qualifies as a "person" under § 7206(1) unless the definition set forth at § 7343 is deemed a "distinct[] express[ion]" otherwise or it would be "manifestly incompatible with the intent" of §§ 7343 and 7206(1) to treat an individual as a "person."

In an effort to establish that the definition of "person" at § 7701(a)(1) does not apply to § 7206(1), Defendant begins by asserting that Congress intended through the enactment of § 7343 to "limit the application of the title-wide definition of 'person' found at 26 U.S.C. § 7701(a)(1)."  (Defendant's 5/7/2009 Motion to Dismiss, Br. in Support at 4.)  He then argues that the use of the term "includes" in § 7343 is meant to provide illustrative examples of a "general class" of "persons" within the scope of this statutory definition.  (*See id.* at 5-8 (citing *Helvering v. Morgan's, Inc.,* 293 U.S. 121, 125 n.1, 55 S. Ct. 60, 61-62 n.1 (1934), and other authorities).)  Because ordinary individuals do not fit within the "general class" described by § 7343 — a class that is typified by corporate

39

officers and employees, as well as members and employees of partnerships — Defendant surmises that such individuals cannot be deemed "persons" within the meaning of § 7343 (and hence under § 7206(1)).

This attempt at statutory construction fails at its initial premise. While Defendant states as *ipse dixit* that it is "unambiguously clear" and "immediately apparent" that § 7343 is intended to limit, and not supplement, the definition of "person" set forth at § 7701(a)(1), (Defendant's 5/7/2009 Motion to Dismiss, Br. in Support at 4-5), the most natural reading of these two definitions suggests otherwise. Under its plain terms, the definition of "person" set forth at § 7701(a)(1) governs throughout the tax code unless another provision "distinctly expresse[s]" otherwise or this definition would be "manifestly incompatible with the intent" of a code provision. Nothing in § 7343 can be construed as a "distinct[] express[ion]" of an intent to override or supplant the § 7701(a)(1) definition of a "person." To the contrary, § 7343 reads quite naturally as a supplement to or clarification of this latter definition: § 7701(a)(1) provides that the term "person" "mean[s] and include[s] an individual, a trust, estate, partnership, association, company or corporation," and § 7343 then builds upon this definition by specifying that it "includes" certain individuals who act on behalf of a corporation or partnership — *i.e.,* "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

This harmonizing construction of § 7701(a)(1) and § 7343 also satisfies the

40

specific dictate of the Internal Revenue Code that "[t]he term[] 'includes' . . . when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined."  26 U.S.C. § 7701(c).  It would violate this code-mandated rule of statutory construction to conclude, as Defendant proposes, that the use of the word "includes" in § 7343 operates to exclude the ***entirety*** of the general definition of "person" set forth at § 7701(a)(1) — *i.e.,* individuals, trusts, estates, partnerships, associations, companies, and corporations — and to wholly supplant this definition with a far more limited class consisting only of corporate officers and employees and members and employees of partnerships.  *See Sims v. United States,* 359 U.S. 108, 112, 79 S. Ct. 641, 644-45 (1959) (construing another code definition of "person" which is materially indistinguishable from § 7343, 26 U.S.C. § 6332(f) (codified at the time at § 6332(c)), and citing § 7701(c) (then codified at § 7701(b)) as "ma[king] [it] certain" that the definition under consideration was not meant to exclude what it did not include).  Thus, it is not only far more natural, but also better comports with § 7701(c), to construe § 7343 as building upon, and not overriding, the more general and broadly applicable definition of "person" found at § 7701(a)(1).

Not surprisingly, then, the courts have uniformly rejected the reading of "person" advocated by Defendant here.  In at least three unpublished opinions, the Sixth Circuit has rejected as meritless the contention that an ordinary individual is not a "person" within the meaning of § 7343.  *See United States v. Maggi,* No. 98-5570, 1999 WL 96651, at *2

(6th Cir. Feb. 5, 1999); *United States v. Napier,* No. 90-1297, 1991 WL 22022, at *1 (6th Cir. Feb. 22, 1991); *United States v. Boling,* No. 87-5051, 1988 WL 3477, at *2 (6th Cir. Jan. 19, 1988). In *Maggi,* 1999 WL 96651, at *2, for example, the defendant challenged his conviction under 26 U.S.C. § 7201 on two counts of tax evasion on the ground that "Congress made it ONLY applicable to the 'person' defined in 26 U.S.C. Sec. 7343 and I have offered unrebutted proofs that I am not such person." The Sixth Circuit held that the defendant was in fact a "person" as the term is defined in the Internal Revenue Code, pointing to the title-wide definition at § 7701(a)(1) and explaining that "[t]he term 'person' as used in the tax code has been consistently, and plainly, defined as any individual." 1999 WL 96651, at *2.

Other circuits have reached the same conclusion. In *United States v. Rice,* 659 F.2d 524, 528 (5th Cir. 1981), the defendant challenged his conviction for willfully failing to file an income tax return, arguing, among other things, that he was not a "person" who was obligated to file an income tax return under the federal tax laws. The Fifth Circuit rejected this argument as a "nigh frivolous non-sequitur," explaining that § 7343 "obviously" was "not intended to exclude individual[s] or to *limit* the ordinary meaning of the term 'person' so as to exclude individuals or 'natural persons,' in counsel's phrase, from their responsibility to comply with the tax laws." *Rice,* 659 F.2d at 528 (emphasis in original). Similarly, in *Latham, supra,* 754 F.2d at 749-50, the defendant appealed his conviction for filing false W-4 statements, arguing that the jury instructions at trial were improper because they did not reflect his interpretation of the

42

term "person" as defined under § 7343.  The Seventh Circuit rejected this contention as "inane," observing that the word "include" as used in § 7343 "is a term of enlargement not of limitation," and that "the reference to certain entities or categories is not intended to exclude all others."  *Latham,* 754 F.2d at 750; *see also United States v. Karlin,* 785 F.2d 90, 91 (3d Cir. 1986); *United States v. Condo,* 741 F.2d 238, 239 (9th Cir. 1984) (finding that "[t]he word 'includes' [in § 7343] expands, not limits, the definition of 'persons'" to encompass the specific employees, officers, and partnership members listed in this provision).

Defendant cites no case law in support of his contrary position.  Nor did he, in his initial brief in support of his motion, even acknowledge any of the foregoing legal authorities that have repeatedly rejected his proposed construction of § 7343.[22] Accordingly, in light of the plain language of the Internal Revenue Code dictating that an individual is a "person," and in light of the absence of authority for a contrary conclusion, the Court denies Defendant's third and final motion to dismiss the indictment.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's January 15,

---

[22]While Defendant addresses these decisions in his reply brief, he faults the courts in these cases for failing to provide adequate explanations of the grounds for their rulings, and for failing to thoroughly analyze the relevant provisions of the Internal Revenue Code.  Be that as it may, this Court's independent analysis of the pertinent statutory language has led it to the same conclusion unanimously reached in these prior cases.

2009 motion to dismiss indictment (docket #18) is DENIED.  IT IS FURTHER

ORDERED that Defendant's May 5, 2009 motion to dismiss indictment (docket #27) also

is DENIED.  Finally, IT IS FURTHER ORDERED that Defendant's May 7, 2009 motion

to dismiss indictment (docket #29) also is DENIED.


                          s/Gerald E. Rosen
                          Chief Judge, United States District Court

Dated:  October 7, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on October 7, 2009, by electronic and/or ordinary mail.

                          s/Ruth Brissaud
                          Case Manager