UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

PETER HENDRICKSON,

       Defendant.
_____/

Case No. 08-20585
Hon. Gerald E. Rosen

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    April 26, 2010   

PRESENT: Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I. INTRODUCTION

On October 26, 2009, Defendant Peter Hendrickson was convicted by a jury on ten counts of filing a false document with the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7206(1). Following this guilty verdict, Defendant filed the present motion on November 3, 2009, seeking a judgment of acquittal or, in the alternative, a new trial. In support of this motion, Defendant challenges (i) the Court's resolution of his pre-trial motion arguing that he is not a "person" within the meaning of § 7206, (ii) the sufficiency of the Government's evidence as to several elements of the charged offenses, (iii) certain of the jury instructions given by the Court, and (iv) the Court's admission of

evidence which, in Defendant's view, violated his rights under the Sixth Amendment's Confrontation Clause.

The Court addressed Defendant's motion during the initial portion of an April 19, 2010 sentencing hearing. For the reasons set forth below and at the April 19 hearing, the Court denies Defendant's motion.

## II.  ANALYSIS

### A. Defendant Has Not Identified Any Basis for the Court To Revisit Its Ruling That Ordinary Individuals Are "Persons" Within the Meaning of § 7206.

As the first ground for his present motion, Defendant argues that the Court erred in its denial of his pre-trial motion in which he argued that the term "person" as used in 26 U.S.C. § 7206(1) has a specialized meaning that does not encompass ordinary individuals. The Court addressed this contention at length in an October 7, 2009 opinion in this case, *see United States v. Hendrickson,* 664 F. Supp.2d 793, 813-16 (E.D. Mich. 2009), and Defendant's present motion merely rehashes the arguments addressed (and rejected) in this October 7 ruling. Accordingly, there is no need to revisit this question.

Moreover, to the extent that Defendant suggests that the Government failed to meet its evidentiary burden of establishing beyond a reasonable doubt that Defendant is a "person" within the meaning of § 7206(1), this challenge to the jury's guilty verdict rests upon the premise that the term "person" as used in the statute has a specialized meaning. The Court, however, expressly held in its October 7 ruling that the term "person" in § 7206(1) encompasses ordinary individuals. *See Hendrickson,* 664 F. Supp.2d at 816. As

the Government points out, the jury could reasonably have inferred from the testimony at trial that this statutory element was satisfied, where Defendant himself took the stand and appeared to be an ordinary individual.

B.  **Defendant's Various Challenges to the Sufficiency of the Evidence Lack Merit.**

Defendant next contends that the Government failed to carry its burden of proof as to various elements of the charged § 7206 offenses.  First, because these offenses rested upon the premise that Defendant falsely reported zero "wages" in various submissions to the IRS, the Government necessarily had to show that Defendant had, in fact, received "wages" for the years in question.  Yet, Defendant contends that no such evidence was introduced at trial.

As the Government points out, there was ample evidence at trial from which the jury could permissibly have concluded that Defendant's claims of zero "wages" were false.  First, the Government introduced into evidence the W-2 forms issued to Defendant by his employer, Personnel Management, Inc., for the years 2000 to 2006, which reported the remuneration he received from the company for each of these years.  In addition, the jury heard from two individuals at Personnel Management, Larry Bodoh and Warren Rose, who discussed Defendant's tenure and responsibilities at the company and characterized Defendant as an "employee."  (*See* Trial Tr. at 370-71, 392-93, 399.)  What is more, Defendant himself described his job duties at the company in his testimony at trial.  (*See id.* at 507-10.)  From this evidence, the jury could permissibly have concluded

3

that Defendant was an "employee" whose remuneration during the relevant years qualified as "wages," as these terms were defined in the jury instructions given by the Court,[1] so that his claims of zero "wages" on his tax forms were false.

Defendant's principal response to this evidence is that it did not establish his receipt of "wages" as he believes this term is properly defined under the tax code. This argument, however, boils down to a disagreement with the jury instructions given by the Court, and does not call into question the sufficiency of the evidence to establish the elements of the charged § 7206(1) offenses as explicated in the jury instructions.[2] Under the Court's descriptions of these elements and definitions of the pertinent terms of the tax code, the evidence introduced by the Government at trial was sufficient to establish beyond a reasonable doubt that Defendant's claims of zero "wages" were false.[3]

---

[1] As discussed below, Defendant separately contends that these jury instructions did not accurately state the law as to the Internal Revenue Code's definitions of "wages" and other relevant terms.

[2] Along the same lines, Defendant appears to fault the Government for failing to present witnesses who would opine that he was an "employee" who earned "wages," and then explain why this was so under the tax code. Since Defendant provided his own contrary views on these subjects at trial, he surmises that the Government had a burden to rebut this testimony. Again, however, the meanings of these terms under the tax code were questions of law for the Court to decide, and it was then the function of the jury to apply the instructions embodying these legal determinations in deciding whether the elements of the charged offenses had been established beyond a reasonable doubt. It did not matter, in other words, whether some witness characterized the remuneration received by Defendant for his work at Personnel Management as "wages" paid to an "employee." Rather, it was up to the jury to determine whether the remuneration reflected in the evidence at trial qualified as "wages" under the instructions given by the Court.

[3] In a related challenge, Defendant attempts to invoke a statute that places a specific evidentiary burden on the Secretary of the Treasury to "produc[e] reasonable and probative information" in response to a taxpayer's "reasonable dispute with respect to any item of income

Defendant next challenges the sufficiency of the evidence that he "[w]illfully" made false statement in his submissions to the IRS, as necessary to sustain his conviction of offenses under § 7206(1). As explained in the Court's October 7, 2009 ruling, in the context of criminal charges brought under the Internal Revenue Code, this "element of willfulness requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Hendrickson,* 664 F. Supp.2d at 807 (internal quotation marks and citations omitted).

As the Government points out in its response to Defendant's motion, ample evidence was introduced at trial from which the jury could have concluded that the element of willfulness was proven beyond a reasonable doubt. First, the Government notes the evidence that Defendant filed tax forms for earlier years, 1997 through 2000, in which he reported the wages from his W-2 forms as "income" and declared taxes on this income, thereby evidencing his knowledge of what the tax laws required.[4] *See, e.g.,*

---

reported on an information return." 26 U.S.C. § 6201(d). In Defendant's view, the Government failed to shoulder this evidentiary burden in this case. Yet, as the Government points out, the Secretary must meet this burden only in order to establish a tax deficiency in the exercise of the Secretary's assessment authority. The Government made no effort at trial to assess any taxes or to establish any tax deficiency, and such a tax deficiency is not an element of the charged § 7206(1) offenses. *See United States v. Dack,* 747 F.2d 1172, 1175 (7th Cir. 1984) (observing that "tax assessment proceedings are civil in nature and are not normally a prerequisite to criminal liability"). Thus, the statute cited by Defendant is inapplicable here.

[4]The Government acknowledges that Defendant altered the jurat on each such tax form to reflect his contention that his earnings did not qualify as taxable income. Nonetheless, these forms could still be taken by the jury as an indication of Defendant's awareness of the prevailing view of the taxing authority — albeit not a view that he shared — that his earnings were taxable.

*United States v. Shivers,* 788 F.2d 1046, 1048 (5th Cir. 1986) (holding that the defendant's willfulness was evidenced by his prior filing of valid returns, as well as by his submission of "'protest' documents" accompanying the return giving rise to the tax evasion charge); *United States v. Shields,* 642 F.2d 230, 231 (8th Cir. 1981) (citing the "[e]vidence of [the defendant's] prior filing and tax paying history" as supporting the jury's finding of willfulness). Beyond this, the Government cites: (i) Defendant's prior convictions for failure to file a return and tax protest activity, as well as his statements at a co-defendant's trial evidencing his antagonism toward paying taxes and the IRS, (*see* Trial Tr. at 477-85); (ii) Defendant's testimony during cross-examination reflecting his rejection of the validity of the court rulings against him in the 2006 civil suit brought by the Government to recover refunds erroneously paid to Defendant for the 2002-03 tax years, and his unwillingness to comply with a court order issued in that case, (*see id.* at 639-46), and (iii) evidence of the notice Defendant received from the State of Michigan informing him of the State's view that his remuneration was taxable income and that his contentions to the contrary lacked merit, (*see id.* at 452-56). The Court agrees that this record is more than sufficient to sustain the jury's finding of willfulness, and Defendant has not even attempted to put forward an alternative reading of this evidence that might warrant a different conclusion.

Indeed, in his reply brief in support of his present motion, Defendant arguably provides further confirmation of the jury's finding of willfulness — or, at a minimum, illustrates his misapprehension of the meaning of this term as the courts have construed it

in cases involving criminal violations of the tax code. In particular, Defendant asserts that "[h]ostility to an institutional mis-application of the law is not evidence of 'willfulness.'" (Defendant's Reply Br. at 5.) Yet, as this Court observed in its October 7, 2009 ruling, "a defendant who knows what the law is and who disagrees with it does not have a bona fide misunderstanding defense" to a charge of willfully violating the tax laws, and "a good faith disagreement with the law is not a defense" to such a charge. *Hendrickson,* 664 F. Supp.2d at 809 (internal quotation marks and citations omitted). Accordingly, much as Defendant might disagree with the IRS's application of the tax code, this disagreement, by itself, does not negate or otherwise serve as a defense to the jury's finding of willfulness.

Finally, Defendant contends that the Government failed to introduce sufficient evidence to establish the statutory requirement that a statement must be false as to a "material matter." 26 U.S.C. § 7206(1). Again, this challenge rests in part upon the erroneous premise that the Government had a burden to offer testimony expressly asserting that Defendant's false statements were "material" within the meaning of the statute. In addition, Defendant suggests that any alleged misstatements in his submissions to the IRS could not have been "material" because (i) the agency had records in its possession — specifically, the W-2 forms issued by Defendant's employer — from which it could have ascertained Defendant's "wages" under the agency's view of this term, and (ii) the agency evidently ignored at least some of these submissions, as it issued refunds for only some tax years and not others, despite Defendant's uniform claim of

zero "wages" for all of the tax years at issue here.

As the Government points out, Defendant's argument on this point fails to comport with the case law addressing the standard for "materiality" under the tax laws. The Sixth Circuit has explained that a misstatement in a submission to the IRS is material if it interferes with or impedes the agency "in its effort to police and verify tax returns." *United States v. Barrow,* 118 F.3d 482, 493-94 (6th Cir. 1997); *see also United States v. Fawaz,* 881 F.2d 259, 263-64 (6th Cir. 1989). Moreover, the court has emphasized that "materiality" under § 7206(1) "is to be measured objectively by a statement's potential rather than by its actual impact on the IRS's verification efforts." *Fawaz,* 881 F.2d at 263 (internal quotation marks and citations omitted). Thus, it does not matter whether the IRS could have accurately ascertained Defendant's tax obligations from the truthful information in its possession regarding his wages, so long as the false information provided by Defendant had the potential to thwart this effort. *See, e.g., United States v. Dain,* No. 06-50446, 258 F. App'x 90, 94 (9th Cir. Nov. 27, 2007) (rejecting a defendant's contention that "since he included his W-2s with his tax returns, his failure to report his actual wages [in his returns] was immaterial"); *United States v. Zvi,* 168 F.3d 49, 59 (2d Cir. 1999) (holding that the defendant's false statements in his tax returns "entailed the failure to report substantial amounts of income and were therefore material as a matter of law"). Likewise, it does not matter whether the IRS might have failed to act upon one or more of Defendant's submissions by issuing each and every one of the

refunds he sought through these submissions, because the standard for "materiality" is objective and does not require a showing that the agency actually was misled by each of these submissions. Accordingly, this challenge to the sufficiency of the evidence as to "materiality," like Defendant's other sufficiency challenges, lacks merit.

C.  **The Court's Jury Instructions Accurately and Properly Apprised the Jury as to the Standards for Evaluating the Evidence and Determining Whether the Elements of the Charged Offenses Had Been Proven Beyond a Reasonable Doubt.**

Defendant's next ground for his motion for a judgment of acquittal or a new trial is that the jury instructions given by the Court were inaccurate or misleading in certain respects. Although his motion is not altogether clear on this point, it appears that his challenge on this score is focused upon the Court's instructions as to the meanings of the terms "wages" and "employee" under the pertinent provisions of the Internal Revenue Code. Defendant contends, in essence, that the Court's jury instructions should have incorporated each of the "numerous and lengthy exceptions" set forth in the tax code's definitions of these terms, and that, by omitting these details, the Court effectively "misled the jury into believing that the statutes provide that *everyone who works (in any capacity) for anyone else* is an 'employee' relevant to the 'wages' definitions, and that ALL remuneration paid to an 'employee' qualifies as 'wages.'" (*See* Defendant's Motion, Suppl. Br. in Support at 14 (emphasis in original).)

A defendant's requested instructions need not be given if they are "covered adequately by the instructions given" or if they lack support in the evidence. *United*

9

*States v. Riffe,* 28 F.3d 565, 569 (6th Cir. 1994). In this case, Defendant has failed to suggest how any of the "numerous and lengthy exceptions" set forth in the Internal Revenue Code's definitions of "wages" and other related terms might be thought to apply under the evidence presented at trial. Rather, the Court is satisfied that the more straightforward definitions presented to the jury accurately summarized the pertinent provisions of the tax code, while omitting what the Government has aptly termed "inapplicable arcana." (*See* Government's Response Br. at 8.) Moreover, in deciding upon an appropriate set of jury instructions, the Court thoroughly reviewed and considered Defendant's preferred instructions on the relevant statutory terms, and the Court remains of the view that these proposed instructions would have needlessly complicated and confused the issues that the jury was called upon to decide, particularly in light of the unrefuted evidence of Defendant's straightforward and ordinary working relationship with Personnel Management, Inc. and the conventional nature of the remuneration he received for this work. However difficult the tax code's definitions of "wages" and its myriad exceptions might be to interpret or apply in some circumstances, Defendant has not suggested how the evidence presented in this case might have implicated any such complexities or nuances in these terms.[5]

---

[5]More generally, it is clear that Defendant was not entitled to jury instructions reflecting his own views as to the purported meanings of the terms "wages" and "employee" under the Internal Revenue Code. In the 2006 civil suit brought against Defendant in this District, the court expressly addressed this subject, holding that Defendant "was an employee of Personnel Management, Inc. in 2002 and 2003 within the meaning of" the pertinent tax code provisions, that his "employer properly withheld federal income and employment taxes from his wages,"

Finally, Defendant argues that the Court's unwillingness to read the entirety of various Internal Revenue Code provisions and definitions to the jury evidences the Court's tacit acknowledgment of the ambiguity of these statutes.  Yet, to the extent Defendant means to raise a "void for vagueness" challenge to the charges against him, he has not identified any ambiguity in the statute upon which the charges in this case are based, 26 U.S.C. § 7206(1).  Alternatively, to the extent that he maintains that the underlying tax code definitions of such terms as "wages," "employee," and the like are too ambiguous to charge anyone with a § 7206(1) violation based on an inaccurate statement of his or her "wages," this precise concern is addressed (and alleviated) through the statutory requirement of a ***willfully*** false statement, as well as the courts' strict interpretation of this requirement of willfulness in the context of criminal charges brought under the Internal Revenue Code.  *See Hendrickson,* 664 F. Supp.2d at 807-08

---

and that Defendant's contentions to the contrary were "frivolous and false."  *United States v. Hendrickson,* No. 06-11753, 2007 WL 2385071, at *3 (E.D. Mich. May 2, 2007).  The Sixth Circuit then affirmed this decision in an unpublished order, observing that Defendant's proffered interpretations of the statutory terms "wages" and "employee" were "tantamount to a typical tax protester argument that the income at issue is not taxable," and determining that his assertions on appeal exhibited "patent baselessness" that warranted the imposition of $4,000 in sanctions.  *United States v. Hendrickson,* No. 07-1510, Order at 4 (6th Cir. June 11, 2008).  Finally, beyond this explicit rejection of Defendant's position in a case to which Defendant himself was a party, the courts have uniformly held that the ordinary remuneration received by privately employed workers qualifies as taxable "wages" under the Internal Revenue Code.  *See, e.g., Perkins v. Commissioner,* 746 F.2d 1187, 1188 (6th Cir. 1984); *Sawukaytis v. Commissioner,* No. 02-2431, 102 F. App'x 29, 33-34 (6th Cir. June 16, 2004); *United States v. Latham,* 754 F.2d 747, 750 (7th Cir. 1985); *Abdo v. Internal Revenue Service,* 234 F. Supp.2d 553, 563 (M.D.N.C. 2002) (observing that "the same tired tax protester 'wages are not income' argument . . . has long been deemed frivolous" and "has been rejected as many times as it has been asserted" (collecting cases)), *aff'd,* 63 F. App'x 163 (4th Cir. May 20, 2003).  Plainly, then, jury instructions based on Defendant's position would not have been an accurate statement of the law.

(noting the Supreme Court's explanation that its "consistent interpretation of the word 'willfully' to require an element of *mens rea* implements the pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers" (internal quotation marks and citation omitted)). Accordingly, Defendant has failed to identify any legitimate or worthwhile purpose that would have been served by the Court's wholesale incorporation of entire, unedited statutory provisions into its instructions to the jury.

**D.     The Court's Cautionary Instructions Appropriately Limited the Jury's Consideration of Certain IRS Records to Legitimate Non-Hearsay Purposes That Did Not Implicate the Confrontation Clause.**

As the final argument advanced in his present motion, Defendant argues that the Court's admission of certain IRS records ran afoul of the Sixth Amendment's Confrontation Clause as construed in the Supreme Court's recent decision in *Melendez-Diaz v. Massachusetts,* 129 S. Ct. 2527 (2009). Yet, as Defendant recognizes, the Court gave the following limiting instruction at the time these records were introduced at trial:

> I have now received into evidence these exhibits that the witness is receiving . . . which contain the conclusion that remuneration which Peter Hendrickson received from Personnel Management, Inc. constituted wages to Mr. Hendrickson.
>
> This evidence has been admitted only for the purpose of establishing that the IRS was of the view that — I'm sorry. That the Internal Revenue Service was of the view that Personnel Management, Inc.'s payments to Mr. Hendrickson constituted wages and that this view was communicated to Mr. Hendrickson.
>
> This evidence is not offered for the purpose of establishing the fact

>that Mr. Hendrickson received wages from Personnel Management, Inc.
>And I instruct you that you cannot consider this evidence for any purpose
>other than the limited purpose for which I have admitted the evidence.

(Trial Tr. at 267-68; *see also id.* at 436-37 (giving a similar limiting instruction).)

In light of this instruction, the admission of the IRS records did not run afoul of *Melendez-Diaz* or the Supreme Court's other Confrontation Clause decisions.  Rather, even assuming that these records contained "testimonial" statements within the meaning of *Melendez-Diaz,* 129 S. Ct. at 2531, the Supreme Court has expressly recognized that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Crawford v. Washington,* 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9 (2004).  In this case, the records were not admitted for the truth of the proposition stated therein — namely, that the remuneration received by Defendant constituted "wages" under the Internal Revenue Code.  Instead, and as the Court's instruction makes clear, the records were introduced only as evidence that **Defendant had notice** of the IRS's view that the remuneration he had received from Personnel Management qualified as "wages."  This non-hearsay purpose did not trigger any Confrontation Clause concerns.  Moreover, this purpose was relevant to an issue that the Government was obligated to prove at trial — namely, willfulness, or the voluntary and intentional violation of a known duty.  *See Hendrickson,* 664 F. Supp.2d at 807.  Consequently, the records were appropriately admitted for the limited purpose stated in the Court's cautionary instruction to the jury.

### III.  CONCLUSION

For the reasons set forth above, as well as the reasons stated at the April 19, 2010 hearing,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's November 3, 2009 motion for judgment of acquittal or new trial (docket #78) is DENIED.


                                      s/Gerald E. Rosen
                                      Chief Judge, United States District Court

Dated:  April 26, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 26, 2010, by electronic and/or ordinary mail.

                                      s/Ruth A. Gunther
                                      Case Manager