# EXHIBIT D

AFFIDAVIT

State of Michigan

County of Washtenaw

Before the undersigned, an officer duly commissioned by the laws of Michigan, on this 4th day of January 2011, personally appeared Jack R. Hendrickson, Jr, who, having been first duly sworn, deposes and says, for the following assertions I have personal knowledge and could testify competently to that effect if called upon to do so.

> I was selected as co-counsel in early 2010 by and for Peter E. Hendrickson in a criminal case brought by the United States Justice Dept before Judge Rosen in the Federal District Court Eastern District of Michigan, case number 20-585.
>
> Mark Lane of Charlottesville, VA was appointed lead defense counsel in late August 2010 by Peter Hendrickson, and an additional co-counsel, Mark Cedrone of Philadelphia, PA, was subsequently appointed (Sept 2010).
>
> I own and manage several real estate companies as well as a renewable energy firm, do not and never have practiced law for any but my own accounts. But as Mr Hendrickson's brother, I acceded to his request that I co-represent him in this grave matter.
>
> My duties, as assigned by Mr Lane, included preparation of numbered exhibits for use in trial, and minor editing of drafts of motions and arguments either filed by Mr Lane or prepared for his verbal presentation in court. Mr Lane rarely responded to my emails proposing ideas on how to conduct the defense. When he did, he dismissed almost every idea out of hand.
>
> Mr Lane, then aged 83 or thereabouts, also determined to run the trial on his terms, with Mr. Cedrone, despite strong litigation skills, also being limited to only certain cross-examination duties in court, and to review of masses of relevant documents, but again, solely in strict support of Mr Lane's agenda. Mr Lane refused any proposed changes to the manner or content of his presentation, which cemented in his mind as to all areas of substance at least one and one half months before the October 20th trial date.
>
> At trial, which proceeded thru 3 days, Mr Lane's physical health, which was not tip-top to begin with, showed noticeable signs of rapid progressive weakening. He complained to the Judge of a weak heart, pointed to one of his bloodshot eyes as evidence of a heart condition, and scheduled at least one postponement of presentation of his case. Mr

Lane's eye condition worsened noticeably during the second trial day from merely bloodshot to blood-filled.

Despite the efforts of both Mark Cedrone and me to offload key Defense Team trial conduct onto us, Mr Lane emphatically shoved aside such offers of aid, remaining in strict control. Nonetheless, Lane had to request that Judge Rosen adjourn the jury early that day.

I prepared under Mr Lane's direction numerous Defense Exhibits, all numbered exactly in sequence (1 thru 31), for use at trial per Lane's exacting, scripted approach (never varying in the preceding one and one half months), each exhibit purposefully prepared to exonerate Peter Hendrickson in multiple ways. However, Mr Lane's confusion at key moments during trial was sufficiently great that when required, during his questioning of government witnesses and of Mr Hendrickson as defense witness, numerous of these 31 exhibits were never even introduced by Mr Lane. I believe only 9 were successfully introduced and these ranked as minor compared to the ones ignored.

Key to the success of Defense at trial was showing with these exhibits BOTH Peter Hendrickson's state of mind (his purity of intent) and his rigorous legal research regarding positions he had taken respecting the federal income tax law, upon which DoJ had brought the criminal charges in question.

Both of these elements—Peter Hendrickson's intent and his rigorous conformance with the requirements of all relevant governing statutes—were fully explicated in chapters of his book "Cracking The Code".

One of the key exhibits prepared by the Defense Team under Mr Lane's direction consisted of several chapters of Peter Hendrickson's book. Simple. Obvious. Comprehensive. Telling.

Mr. Lane's confusion at a key moment with Mr Hendrickson on the stand resulted in his failure to introduce this exhibit. When I and Mark Cedrone individually and emphatically urged introduction of this and other key, number-sequenced exhibits, Mr Lane whispered to us that he was 're-orienting' their sequence of introduction. Such introductions never occurred.

While Mr Lane's grave, noticeable health decline, reflected in slurred words, his bulging eyes and his facial pallor, were ultimately the cause of mismanagement of and failure to introduce these key exculpatory exhibits when required by the case, another contributing factor was the repeated urging, nay demands, of Judge Rosen that the trial be rushed to conclusion, so that he might travel to Thailand for a vacation.

Judge Rosen saw Mr Lane noticeably declining, watched him doggedly retain control of the case despite the urgent whisperings of Mr Cedrone and me, and yet did everything in his considerable power to truncate the Defense case presentation.

In addition, and evocative of Mr Lane's loss of effectiveness at trial, he only cross-examined a single government witness. His failure to confront the other government witnesses on behalf of Mr Hendrickson alone is enough to trigger a new trial.

As a result of the failure of health of his lead attorney, Peter Hendrickson's constitutional right to a fair trial was utterly compromised.

Affiant: _____
Jack R. Hendrickson, Jr

Witness: _____

Sworn and subscribed before me this 6th day of January A.D. 2011

_____

COURTNEY TURNER
NOTARY PUBLIC – MICHIGAN
BRANCH COUNTY
ACTING IN THE COUNTY OF Washtenaw
MY COMMISSION EXPIRES AUG. 8, 2014

1-6-11